**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEADER ENTERTAINMENT S.A., | |
| Plaintiff, | |
| v. | Case No.: 26-cv-05666 |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | **COMPLAINT** Jury Trial Demanded |
| Defendants. | |

Plaintiff, LEADER ENTERTAINMENT S.A. ("LEADER" or "Plaintiff"), hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, unincorporated associations and foreign entities identified on **Schedule A**[1] to this Complaint (collectively, "Defendants"):

**INTRODUCTION**

1. This action has been filed by Plaintiff to combat online counterfeiters who trade on Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's copyrights, which are covered by U.S. Copyright Office Registration Nos. VA 2-409-101, VA 2-409-102, VA 2-409-104, and VA 2-411-390 (the "LEADER Copyrights"); and Plaintiff's trademarks, which are covered by U.S. Trademark Registration Nos. 6,624,657, 6,823,426, 7,082,813, and 7,185,436 (the "LEADER Trademarks") (the LEADER Copyrights and LEADER Trademarks together, the "LEADER IP").

---

[1] Plaintiff is filing a motion to temporarily seal Schedule A simultaneously with the filing of this Complaint.

2. The LEADER IP is valid, subsisting, and in full force and effect. True and correct copies of the federal copyright registration certificates for the LEADER Copyrights are attached hereto as **Exhibit 1**. True and correct copies of the federal trademark registration certificates for the LEADER Trademarks are attached hereto as **Exhibit 2**.

3. Defendants are improperly advertising, marketing, and/or selling unauthorized and illegal products infringing upon the LEADER IP (the "Counterfeit Products"). By selling Counterfeit Products that purport to be genuine and authorized products using the LEADER IP (the "Plaintiff's Products"), Defendants cause confusion and deception in the marketplace.

4. Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including on the platforms eBay, Etsy, Shein, Temu, TikTok, and Walmart (collectively, the "Marketplace Platforms").

5. Defendants design their online marketplace accounts to appear to be selling genuine Plaintiff's Products, while selling inferior imitations of such products.

6. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of the LEADER IP, as well as to protect consumers from unknowingly purchasing Counterfeit Products.

8.     As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishing of their valuable trademarks and goodwill. Plaintiff also has been and continues to be irreparably damaged through the copying and misappropriation of their valuable copyrights and goodwill. Therefore, Plaintiff seeks injunctive and monetary relief.

9.     This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in New York and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in New York and in this Judicial District.

10.     In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## SUBJECT MATTER JURISDICTION

11.     This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 *et seq*., and 28 U.S.C. §§ 1331, 1338(a)–(b).

12.     This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq*., and 28 U.S.C. §§ 1331, 1338(a)–(b).

13.     This Court has jurisdiction over the unfair deceptive trade practices claims in this action that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION AND VENUE

14. Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and (3), or, in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District; derive substantial revenue from business transactions in New York and in this Judicial District; and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

15. In addition, because Plaintiff sells genuine merchandise and apparel bearing the LEADER Copyrights and the LEADER Trademarks in this Judicial District, Defendants' illegal counterfeiting and infringing actions have injured Plaintiff in this Judicial District through lost sales and customers. Defendants' actions have also harmed Plaintiff by confusing and deceiving consumers in this Judicial District who can view Defendant Internet Stores such that Defendants should reasonably expect such actions to have consequences in New York and this Judicial District.

16. For example, Defendant Internet Stores accept orders for Counterfeit Products from and offer shipping to New York addresses located in this Judicial District. Exemplar screenshots of the shopping cart from Defendant Internet Stores allowing Counterfeit Products to be shipped to this Judicial District are attached as **Exhibit 3** to the Declaration of Juan Pablo Christensen, filed in conjunction with the filing of this Complaint**.**

17. Upon information and belief, Defendants also were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in New York and in this Judicial District, through accounts (the "User Account(s)") on e-

4

commerce sites including the Marketplace Platforms, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them. Through these User Accounts, consumers in the United States, including New York and in this Judicial District, can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products, and to place orders for, receive invoices for, and purchase Counterfeit Products for delivery in the United States, including New York and in this Judicial District, as a means for establishing regular business with the United States, including New York and in this Judicial District.

18. Defendants have transacted business with consumers located in the United States, including New York and in this Judicial District, for the sale and shipment of Counterfeit Products.

19. Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of copyright and trademark infringement in this Judicial District and do substantial business in the Judicial District.

## THE PLAINTIFF

20. LEADER is a limited company organized under the laws of Argentina with its principal place of business in Buenos Aires, Argentina.

21. LEADER is the creator of the LEADER Copyrights, as follows:

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-409-101 | LORITO PEPE | Aug. 22, 2024 |
| VA 2-409-102 | LA VACA LOLA | Aug. 22, 2024 |
| VA 2-409-104 | BARTOLITO | Aug. 22, 2024 |
| VA 2-411-390 | ZENON | Sep. 5, 2024 |

22.     LEADER is the owner and/or assignee of the LEADER Trademarks, as follows:

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 6,624,657 | (Classes 9, 16, 18, 25, 28, 35, 38, 41) | Jan. 25, 2022 |
| 6,823,426 | (Classes 9, 16, 18, 25, 28, 35, 38, 41) | Aug. 23, 2022 |
| 7,082,813 | (Classes 9, 16, 18, 21, 25, 28, 29, 35, 38, 41) LA VACA LOLA | Jun. 20, 2023 |
| 7,185,436 | (Classes 9, 16, 18, 25, 28, 35, 38, 41) BARTOLITO | Oct. 10, 2023 |

**THE DEFENDANTS**

23.	Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

24.	Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

**THE PLAINTIFF'S PRODUCTS**

25.	Plaintiff is a recognized leader in the Spanish-language children's entertainment and consumer products industry, distinguished by its digital-first content strategy, brand credibility, and scale. Plaintiff's products were developed to offer a music-driven preschool franchise built around original characters and songs. Plaintiff's brand and content have generated a massive following across YouTube and YouTube Kids, at their own YouTube Channels "El Reino Infantil" (translated as "The Children's Kingdom"), giving Plaintiff's Products an established, pre-existing audience connection to consumers as opposed to relying on a newly introduced brand. Plaintiff's products are extensively tested and produced under controlled sourcing and rigorous quality standards across a broad portfolio of licensed series, characters, and products.

26.	From its origins as a YouTube channel dedicated to children's songs and original characters, LEADER has grown into a widely adopted brand with billions of views across its online content, exclusive licensing partnership across numerous product categories and territories worldwide, and a substantial subscriber base. Plaintiff has also received numerous awards and industry recognitions for its products, including YouTube Diamond, Gold, and Silver Play Button awards across its channel network; the Honorary Prize for Best Musical Content at KidFestival 2025 in Spain; the Eikon Award for Sustainability in Education; the Dircoms Award for Online

Communication; the "Pilar de la Industria" honorary recognition at the PRODU Awards during MIP Cancun; and a finalist selection in the Digital-First Program category at the Rose d'Or Latinos Awards in 2026.

27. From the launch of its first audiovisual content under its flagship IP, "La Granja de Zenón," in 2016, Plaintiff and its authorized licensees have been the official source of genuine products incorporating the LEADER IP in the United States and around the world, which include an expanding portfolio of related entertainment and consumer products, such as more than 60 different merchandise items (including backpacks, toys, and plush toys), live theater productions such as, but not limited to, La Granja de Zenón live show at James L. Knight Center in Miami in August 2025, and additional series and character-based media. Since Plaintiff launched the LEADER Products, it has followed a defined strategy for positioning its brand, marketing and promoting the product line in the industry and to consumers, and establishing distribution channels. Plaintiff distributes, promotes, and/or sells its genuine LEADER Products directly to consumers through its own network of YouTube channels and related digital platforms, including Instagram, TikTok, and Facebook (Meta), and through exclusive licensees worldwide, with Arbrex Commercial Group SRL serving as one of Plaintiff's first retail partners. Through these promotional efforts and others Plaintiff leverages ongoing partnerships to drive brand awareness and consumer engagement.

28. Since at least 2014, the LEADER IP is and has been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the LEADER IP in the industry and to consumers. Plaintiff's promotional efforts include, by way of example but not limitation, experiential and retail-driven marketing initiatives, such as live theater productions touring across Spain, Argentina, and numerous Latin American countries

(including past tour dates in the United States and upcoming dates in Puerto Rico); industry events aimed at establishing new licensing partnerships; and co-produced digital campaigns with partners including Google Argentina and YouTube. Plaintiff also conducts multi-platform content distribution across digital streaming services, including, but not limited to, YouTube, Netflix, HBO, PlutoTV, Amazon, Flow, Warner, and Paramount, as well as widely distributed video content that has garnered billions of views.

29. The registrations for the LEADER Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use those trademarks pursuant to 15 U.S.C. § 1057(b).

30. The LEADER Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125 (c)(1), and they have been continuously used and never abandoned. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the LEADER Products. Indeed, products embodying either or both the LEADER Copyrights and the LEADER Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.



*Example of Genuine LEADER Product Incorporating the LEADER IP.*

31.     Plaintiff owns the exclusive rights, including without limitation, the rights to reproduce the trademarked designs in copies, to prepare derivative works based upon the trademarked designs, and to distribute copies of the trademarked designs to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the LEADER Trademarks as the owner of those trademarks.

32.     Plaintiff owns all rights, including without limitation, the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the LEADER Copyrights as the owner of those copyrights.

## THE DEFENDANTS' UNLAWFUL CONDUCT

33.     The success of Plaintiff's Products has resulted in significant counterfeiting. Plaintiff have identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms. These Defendant Internet Stores offer

for sale, sell, and import Counterfeit Products to consumers in this Judicial District and throughout the United States.

34. Defendants have persisted in creating such online marketplaces and internet stores that contribute to the hundreds of billions of dollars of counterfeit goods sold each year. According to an intellectual property rights seizures statistics report issued by U.S. Customs and Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was approximately $5.4 billion, and over $5 billion of seized goods came from China and Hong Kong. *See* Declaration of Christopher Tom ("Tom Decl."), filed simultaneously with the filing of this Complaint, Ex. 2.

35. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Plaintiff's Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

36. Plaintiff has not licensed or authorized Defendants to use the LEADER Copyrights or the LEADER Trademarks. None of the Defendants is an authorized retailer of genuine LEADER Products.

37. Defendants also deceive unknowing consumers by using without authorization the LEADER IP within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for Plaintiff's Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the

11

Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Plaintiff's Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.

38. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

39. Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

40. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. The Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

41. In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under

User Accounts once they receive notice of a lawsuit.[2] Consumers of toys are at especially high risks and warned to be particularly vigilant.[3]

42. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.[4] Rogue servers are notorious for ignoring take down demands sent by brand owners.

43. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. According to the previously cited 2024 U.S. Customs and Border Protection report on seizure statistics, in fiscal year 2024 "97% of [Intellectual Property Rights] seizures in the cargo environment occurred in the de minimis shipments." *See* Tom Decl. Ex. 2. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff' enforcement efforts.

44. On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction

---

[2] *Buyers Beware! ICE HIS and CBP in Boston warn consumers about counterfeit goods during holiday shopping season*, U.S. Immigration and Customs Enforcement (Dec. 11, 2019), https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (last visited Jul. 1, 2026) (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate goods on legitimate websites")

[3] *New toolkit helps consumers avoid scams while holiday shopping*, U.S. Immigration and Customs Enforcement (Nov. 23, 2021) (issuing warnings in the context of counterfeit and knockoff toys, and quoting industry leaders that "[w]hen it comes to fake toys, there are significant safety concerns."), https://www.ice.gov/news/releases/new-toolkit-helps-consumers-avoid-scams-while-holiday-shopping (last visited Jul. 1, 2026).

[4] Rogue internet servers and sellers are a well-known tactic that have even been covered in Cabinet-level agency reports. *See* 2023 Review of Notorious Markets for Counterfeiting and Piracy (available online at https://ustr.gov/sites/default/files/2023_Review_of_Notorious_Markets_for_Counterfeiting_and_Piracy_Notorious_Markets_List_final.pdf) (last visited Jul. 1, 2026).

of this Court. Analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

45. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the LEADER IP in connection with the advertisement, distribution, offering for sale, and/or sale of Counterfeit Products into the United States and New York over the internet.

46. Each Defendant Internet Store offers shipping to the United States, including New York in this Judicial District, and each Defendant has offered to sell counterfeit Plaintiff's Products into the United States, including New York in this Judicial District.

47. Defendants' use of the LEADER IP in connection with the advertising, distribution, offering for sale, and/or sale of Counterfeit Products is likely to cause and has caused confusion, mistake and deception by and among consumers and is irreparably harming Plaintiff.

48. Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the LEADER IP, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Plaintiff's Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

49. Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and Plaintiff's Products.

**FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*)**
**[Against Defendants Designated in Schedule A to the Complaint]**

50.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–49 of this Complaint.

51.     Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the LEADER Copyrights.

52.     Defendants have sold, offered to sell, marketed, distributed, and/or advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products in connection with the LEADER Copyrights without Plaintiff's permission.

53.     Defendants had access to the Plaintiff's Products incorporating the LEADER Copyrights before Defendants created the Defendant Internet Stores.

54.     Upon information and belief, Defendants have directly copied the LEADER Copyrights. Alternatively, Defendants' representations of the LEADER Copyrights for Plaintiff's Products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to the LEADER Copyrights, and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of the LEADER Copyrights for the Plaintiff's Products.

55.     As just one example, Defendants deceive unknowing consumers by using the LEADER Copyrights without authorization within the product descriptions of the Defendant Internet Stores to attract customers as follows:

15

*Exemplary Images of Plaintiff's Registered Copyright Works*

VA 2-409-101 (Lorito Pepe)          VA 2-409-102 (La Vaca Lola)

          

VA 2-409-104 (Bartolito)          VA 2-411-390 (Zenon)

          

*Compared to Exemplary Counterfeit Product Offered by Defendants*



**Fastest delivery: 5 BUSINESS DAYS** 2D Flat, 2D Door Banner, [2D Flat Party Banner] 1pc Colorful Farm Animals and Cake, La Granja De Zenon Banner Backdrop Available in Multiple Sizes Ideal for Happy Birthday Photography, Indoor and Outdoor Party Decorations, Party Background, Indoor

20 sold | Sourced from ➝ ›

⏰ **LAST DAY Est. $5.39** after applying promos to **$7.18** ›

Pay $1.34 today 🔸 Klarna

✓ Free shipping | ✓ $5.00 Credit for delay

**Size**

🔥 27.56inch X 43.31inch | 31.5inch x 47.24inch | 51.18inch x 59.06inch

🔥 43.31inch x 70.87inch

⏱ Pre-order. Delivery: 5-15 business days ❓

**Qty** [ 1 ⌄ ]

**Add to cart**
Fastest delivery in 5 business days

🚚 Free shipping for this item ›
  ⚡ Fastest delivery in **5 BUSINESS DAYS**
  ⓘ Min. order value: $20.00 ›

✅ Safe payments · Secure privacy ›

🔖 Order guarantee ›
Free returns | Best price guarantee | $5.00 Credit for delay | Return if item damaged | 15 ›

What's included ›

### Unique backdrop

**Unique backdrop**    2K+ Sold | 4.9 ★

[ 🔗 Follow ]    [ Shop all items (15K+) ]

Home / Home & Living / Event & Party Supplies / Decorations / Party Backdrops / La Granja De Zen N Theme Party Backdrop The Zenon Farm Party Home Decor Poster Photography Background



Local La Granja De Zen N Theme Party Backdrop The Zenon Farm Party Home Decor Poster Photography...
SKU: sh25080740763943479 📋

From **$13.87** $37.00 -63%

🚚 Free Shipping & 4-5 Biz Days Est Delivery

**Size**

90x60 Inches | 80x60 Inches | 60x40 Inches

40x30 Inches

All Size are eligible for 4-5 Biz Days Est Delivery

**ADD TO CART** ♡

Earn up to 13 SHEIN Points calculated at checkout.

**Shipping to** New York, NEW YORK, United States

🚚 **Free Shipping** ›
  Est. Delivery: Feb 27 - Mar 2, 68.90% are ≤ 5 business days ❓
  4-5 Biz Days Est Delivery : Excludes weekend and holidays

💲 **30-Day Free Returns** ›

🛡 **Shopping Security** ›
  ✓ Safe Payments   ✓ Privacy Protection

🏪 Marketplace **Sold by CHROMOLEXCMI**
Ships from CHROMOLEXCMI US Warehouse
To report this seller and/or product ›

56. Defendants' exploitation of the LEADER Copyrights for the Plaintiff's Products in the Defendant Internet Stores constitutes infringement of the LEADER Copyrights.

57. On information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of the LEADER Copyrights. Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiff made and distributed in the United States, including this District, caused to be made and distributed in the United States, including this District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of Counterfeit Products.

58. Each Defendant either knew or should have reasonably known that Plaintiff's Products were protected by copyright and that their representations infringed on the LEADER Copyrights. Each Defendant continues to infringe upon Plaintiff's rights in and to the various copyrighted works.

59. As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

60. In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

61. In the alternative, Plaintiff is entitled to, and may elect to choose, statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

62. Plaintiff is entitled to, and may elect to choose, injunctive relief under 17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing work and for an order under 17 U.S.C. § 503 that any of Defendants' infringing products be impounded and destroyed.

63. Plaintiff seeks and is also entitled to recover reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

64. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known LEADER Copyrights.

<u>SECOND CAUSE OF ACTION</u>
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**
**[Against Defendants Designated in Schedule A]**

65. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-49 of this Complaint.

66. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered LEADER Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The LEADER Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's Products provided under the LEADER Trademarks.

67. Defendants have sold, offered to sell, marketed, distributed, and/or advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products in connection with the LEADER Trademarks without Plaintiff's permission.

19



LA GRANJA DE ZENÓN Vaca Lola Musical Stuffed Animal 8-Inch Soft and Huggable Plush Toy with Music, Beloved El Reino Infantil Character

Visit the LA GRANJA DE ZENÓN Store

4.4 ★★★★☆ (6,827)

$24⁹⁰

Get $50 off instantly: Pay $0.00 $24.90 upon approval for Amazon Visa. No annual fee.

Get **Fast, Free Shipping** with Amazon Prime
**FREE Returns** ⌄

Size: **8 in**

| 8 in | 14 in |

Color: **Vaca Lola**

  

| $24.90 | $24.90 | $24.90 | See 1 options with no featured offers |

- INTERACTIVE MUSICAL TOY: Press the belly of the Caballo Percherón plush to play your child's favorite songs from La Granja De Zenón.
- SOFT AN CUDDLY: Made with high-quality, plush materials, this toy is perfect for cuddles and comfort during bedtime or playtime. This 8-inch plush is ideal for kids to carry with them everywhere.
- CULTURAL CONNECTION: A wonderful way to introduce or reinforce Spanish-language learning through familiar songs and characters.
- SAFE FOR KIDS: Designed with children's safety in mind, free from harmful materials, making it a great choice for toddlers and young children.
- ENCOURAGES IMAGINATION: Sparks creativity and imaginative play as children interact with their favorite farm animal character.

› See more product details

Click to see full view



*Exemplars of Genuine Products Incorporating Plaintiffs' Trademarks*

*COMPARED TO*

20



*Exemplars of Counterfeit Products Sold by Defendants Infringing Plaintiffs' Trademarks*

68. Plaintiff is the owner and/or assignee of the LEADER Trademarks and official source of the LEADER Products. The U.S. Registrations for the LEADER Trademarks are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the LEADER Trademarks and are willfully infringing and intentionally using counterfeits of the LEADER Trademarks. Defendants' willful, intentional, and unauthorized use of the LEADER Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

69. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

70. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and/or sale of Counterfeit Products.

71. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known LEADER Trademarks.

**THIRD CAUSE OF ACTION**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**
**[Against Defendants Designated in Schedule A]**

72. Plaintiff repeats and incorporates by reference herein their allegations contained in paragraphs 1–49 of this Complaint.

73. Defendants' promotion, marketing, offering for sale, and/or sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

74.     By using the LEADER Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

75.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

76.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## FOURTH CAUSE OF ACTION
### UNFAIR COMPETITION (New York Common Law)
### [Against Defendants Designated in Schedule A]

77.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-49 of this Complaint.

78.     Plaintiff has not licensed or authorized Defendants to use the LEADER Trademarks, and none of the Defendants are authorized retailers of genuine LEADER Products.

79.     Defendants knowingly and intentionally trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with the LEADER Trademarks.

80.     Defendants' promotion, marketing, offering for sale, and/or sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

81.     Defendants knew, or should have known, that their promotion, marketing, offering for sale, and/or sale of Counterfeit Products has caused and will continue to cause confusion, mistake and deception among purchasers, users, and the public.

82. In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiff's Products including, for example, by (i) using SEO tactics and social media to misdirect customers seeking Plaintiff's Products to the Defendant Internet Stores; (ii) using deceptive advertising practices within the text and meta data of the Defendant Internet Stores; and (iii) taking other steps to deceive and confuse the consuming public.

83. On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

84. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**DEMAND FOR RELIEF**

85. Plaintiff hereby demands judgment as follows:

a. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i. using the LEADER Copyrights and the LEADER Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine LEADER Product or is not authorized by Plaintiff to be sold in connection with the LEADER Copyrights and/or the LEADER Trademarks;

ii. passing off, inducing, or enabling others to sell or pass off any product as a genuine LEADER Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the LEADER Copyrights and/or the LEADER Trademarks;

iii. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

iv. further infringing the LEADER IP and damaging Plaintiff's goodwill;

v. otherwise competing unfairly with Plaintiff in any manner;

vi. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear the LEADER Copyrights and/or the LEADER Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

b. Entry of an Order that the Marketplace Platforms, including without limitation eBay, Etsy, Shein, Temu, TikTok, Walmart, and any other online marketplace account through which Defendants are selling Counterfeit Products disable and cease providing services for any accounts through which Defendants sell Counterfeit Products;

c. That Plaintiff be awarded statutory damages of not less than $750 and not more than $30,000 for each and every infringement of the LEADER Copyrights pursuant to 17 U.S.C. § 504(c)(1), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement;

d. That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the LEADER Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

e. In the alternative, that Plaintiff be awarded statutory damages of not less than $1,000 and not more than $2,000,000 for each and every use of the LEADER Trademarks;

f. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

g. Award any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

86. Plaintiff hereby demands a trial by jury.

Dated:      July 2, 2026

Respectfully,

*/s/ Christopher Tom*
Christopher Tom, Esq. (S.D.N.Y. Bar No. CT1983)
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
ctom@bsfllp.com

*Counsel for Plaintiff LEADER ENTERTAINMENT S.A.*